DeadeeicK, Ch. J\,
delivered the opinion of the court:
The complainant, Mrs. A. 0. Graves, filed her bill in the chancery court at Winchester, seeking to enforce a lien npon thirty acres of land conveyed to the Sewanee Tanning and Manufacturing Company, by herself and husband, Z. C. Graves, and her daughter, Florence M. Graves, by deed of 28th of February, 1868.
She exhibits as muniments of her title to the land at the time of its conveyance to the tanning company, the following:
1. A deed from her husband, Z. 0. Graves, dated March 20, 1865, to G. E. Folwell.
2. A deed from G. E. Folwell, to her daughter, Florence M., dated June 19, 1865.
8. The will of Florence_M., in which is devised to Mrs. A. C. Graves, the land, under certain conditions, executed 26th of July, 1865, shortly before her marriage to Folwell, and proved at December term, 1871, of the county court, some time after the death of said Florence.
In 1870 the Sewanee Company had mortgaged the thirty acres of land to Wm. Simmons, and he, on 23d of November, 1871, assigned the mortgage to George Simmons, ExT. This mortgage and assignment thereof, were registered at the times they were respectively executed.
In March, 1872, the Sewanee Company made a further mortgage .to the Shelbyville Savings Bank, which was duly registered.
The Shelbyville Savings Bank had large judgments *573 against the Sewanee Company, and Z. 0. Graves, and others, who are made defendants to its bill and amended cross-bills.
And in this bill and amended bill, as well as in its answer to Mrs. Graves’ bill, which it files as a cross-bill, it charges that the conveyance to Folwell by A. 0. Graves, and the subsequent conveyance to Florence, and her will in favor of Mrs. Graves, were parts of a fandnlent scheme to enable Z. C. Graves to divest himself of title to the whole of the land he owned, being about forty-six acres, including the thirty acres conveyed to the Sewanee Company, and vest the same in his wife.
In the deed to Folwell, a lien is retained npon the forty-six acres, in favor of Z. C. Graves, for the three notes of $1,000 each, due at two, three, and four years, for purchase money, no part of which was ever paid.
In the deed to the Sewanee Company, the consideration for the thirty acres conveyed, is expressed to be $2,500 in the stock of the company, which was issued to Mrs. Graves. The deed, however, contains this further stipulation: “It is, however, expressly understood and agreed that a lien is hereby retained upon the tract of land aforesaid, as an indemnity to the said A. 0. Graves, that the said stock issued to her, as aforesaid, shall be worth to her $2,500, whenever she may desire to convert the same after the first of duly, 1869, the said lien to be discharged by a transfer in any manner of said stock by the said A. C. Graves, or whenever the same shall pass out of her hands.”
The stock was never, in any manner, transferred, and is valueless.
Florence, the daughter of Mrs. Graves, and her husband, was married in August, 1865, to Folwell, who had, in the June previous, conveyed the land to her, which she, by will, executed before her marriage, devised to her mother.
The Savings Bank also prays to be substituted to the rights of Z. C. Graves, in his lien for the unpaid purchase *574 money on the land, and as a creditor of said Z. C. Graves, have the land sold for its benefit for nnpaid purchase money.
All the causes were consolidated and heard together, and the chancellor held that Mrs. Graves was entitled to the $2,500, the consideration of the land, and that the Savings Bank was entitled to reach the last two notes of $1,000 each, executed by Folwell to Z. C. Graves, holding, as we infer from the argument, that the $1,000 note first due was barred by the statute of limitation of six years.
The decree then declares that the sum of $2,000, being the last two notes, which it was held the bank could reach, should be set off against the $2,500 decreed in favor of Mrs. Graves, which would leave $500 in favor of Mrs. Graves, which it was decreed ivas superior to the lien of the bank and Simmons, and directed, if the $500 was not paid in thirty days, that the land should be sold for the $500.
From this decree the bank and Mrs. Graves appealed.
Folwell is made a party to the bank’s bills, and does not answer, nor is there any plea of the statute of limitation. Florence Graves, soon after her marriage, obtained a divorce from Folwell, and he left the country. Beside the fact that no statute of limitation is interposed to the notes of Folwell, the deed to him, upon its face, expressly reserves a lien for the payment of each and every one of said notes.
The chancellor allowed no interest upon said note, probably because the evidence showed that Graves had been in possession of the forty-six acres ever since the sale, except the thirty acres which he united -with his wife and daughter to convey in 1868, and this was, perhaps, equitable and right.
But upon the facts disclosed, the savings bank is entitled to Graves’ rights in the land to the extent of the unpaid purchase money, being the sum of $3,000, and for this amount a decree will be rendered here in favor of the *575 tank, and the thirty acres of land -will he subjected to sals for its satisfaction.
At the time of the conveyance of the forty-six acres by Graves to Folwell, Graves owned no other real estate, and but little personalty subject to execution. He was considerably indebted at the time, and, among other debts, owed a considerable part of the purchase money for the land conveyed, and a part of this indebtedness, it appears, still remains unpaid.
But, in Graves’ deed to Folwell, he acknowledges the receipt of $100 of the purchase money, and expressly retains a lien upon the face of the deed for $3,000, the balance of the purchase money, no part of which was ever paid.
This deed was registered, and the conveyance by Fol-well to Graves’ daughter, Florence, did not displace such lien in favor of Graves, nor did Florence’s will have that effect, but the lien in favor of Graves was valid and subsisting up to the time that he united with his wife and daughter in the deed of February, 1868, to the Sewanee company, for thirty of the forty-six acres, by reason of his lien, which could have been reached by his creditors. And if the transactions had stopped at that point, his conveyance to Folwell and Folwell’s to Florence, might not have been considered a fraud upon the rights of the creditors of Graves. But, when, in 1868, Graves being still indebted at the time beyond his ability to pay, he unites with his daughter and wife in the conveyance of the thirty acres to the Sewanee company, he, without consideration, and for the purpose of securing to his wife the proceeds of the thirty acres, divested himself of all interest in, or lien upon said land, to the prejudice of the rights of his creditors.
At that time his condition was not such as that he could give away that amount of means, available for the payment of his debts, without endangering the claims of his creditors.
*576 It was a fraud upon Ids crediors tlius to dispose of bis rights and interests in the thirty acres of land, the fraud consisting in the renunciation of the lien in his favor, and the provision in the deed that the consideration should be paid to his wife.
The Sewanee company, however, not participating in the fraud, got a good title to the land, and although the conveyance by Z. C. Graves was, in form, directly to the Sewanee company, its intent and effect were to clothe his wife,- as against himself and his creditors, with all his interests in and remedies against the land. It provides that the consideration shall be paid to her for her separate use, and a lien is retained to secure the payment.
It is this lien that his creditors seek the benefit of, without asking to disturb the sale to the Sewanee company.
"We are of opinion the said Z. C. Graves had a beneficial interest in the thirty acres, of which he attempted to divest himself in favor of his wife, and that his creditors are entitled to the benefit of it.
The savings bank, which seeks to reach his equities in the land, is entitled to have the benefit of the lien retained for the payment of the $2,500, on the thirty acres, in the deed to the Sewanee company, and to have it sold for the satisfaction of said sum, as we are satisfied that the stock of the company issued to Mrs. Graves, was not received in satisfaction of the purchase money, nor has the lien therefor been in any way released or discharged.
But there is no stipulation for interest on the $2,500, and none will be allowed.
If the thirty acres yields upon sale the amount of $2,500, there will still be due tc Graves, from Folwell, on the price of the forty-six acres, a balance of $500.
But as Graves and his family have had the possession and use of the land since the sale and conveyance of it by him to Folwell, and by Folwell to Florence, it will be equitable to treat the use and occupation, or rents and *577 profits, as an equivalent to tbe interest on tbe purchase money, and no interest will be charged.
The sixteen acres remaining after the sale of the thirty acres, will likewise be subjected to the debt due the savings bank from Graves, to the extent of $500, or such other sum as the thirty acres may fail to pay, the savings bank, as creditor of Graves, being substituted to his rights and lien as against Eolwell for unpaid purchase money to the extent of $3,000.
No decree as to the Mary Sharp College property will be rendered, none having been pronounced by the chancellor, nor is there anything in the record from which we can see that the bank is entitled to any relief as to that property.
The costs of these causes, in this court and in the chancery court, will be paid out of the proceeds of the sale of the land. The sale 'will be made upon a credit of six, twelve, and eighteen months, without the right of redemption.